ZULVER REALTY CO., INC. *v.* SNYDER ET AL.

[No. 7, October Term, 1948.]

376

*Decided November 10, 1948.*

·The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Abram C. Joseph,* with whom was *Samuel B. Rochkind* on the brief, for the appellant.

*Eugene Hettleman,* with whom was *Earl I. Rosenthal* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was instituted by Nathan Snyder and Isaac Read to recover from Zulver Realty Company, Inc., a

Maryland corporation, a deposit of $2,000, which they had made as part payment in the purchase of a lot of ground improved by a three-story apartment building situated at 3022 Garrison Boulevard in the City of Baltimore.

The property was sold at auction on November 6, 1947, for $20,925, and the purchasers agreed to pay the balance of the purchase price within 30 days. On November 25 Earl I. Rosenthal, attorney for the purchasers, cast doubt upon the marketability of the title, advising the corporation that the property had been owned by Anna M. Shaw at the time of her death in 1944, and that it was subsequently sold by her executors, but that it was questionable whether they actually had the power to sell it. On December 8 the attorney wrote another letter to the corporation demanding that it procure a confirmatory deed from the heirs of Mrs. Shaw on or before December 15. The corporation proceeded to do so, and on December 26 informed plaintiffs that it had received the instrument and would record it on Monday, December 29. But in the meantime on December 24 the purchasers had already entered suit to recover the amount which they had paid on the day of the sale. They alleged that they were ready and willing to consummate the sale prior to December 6, but defendant was unable to deliver a good and merchantable title to the property, and consequently they canceled the contract and demanded a return of the deposit. The Court held that the title was not marketable, and entered judgment accordingly in favor of plaintiffs for $2,000. From that judgment defendant took this appeal.

*First.* The chief objection to the title was that the will of Mrs. Shaw did not explicitly direct her executors to sell the property, and hence the sale was not valid and effectual, even though ratified by the Orphans' Court of Baltimore City. By mandate of the Legislature, the Orphans' Courts in this State shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred by law. Code 1939, art. 93, sec. 272. The Orphans' Courts thus have only a

special and limited jurisdiction, and the facts necessary to clothe them with jurisdiction must affirmatively appear upon the face of their proceedings. *Norment v. Brydon,* 44 Md. 112, 116; *Mudge v. Mudge,* 155 Md. 1, 141, A. 396; *Baldwin v. Hopkins,* 171 Md. 97, 100, 187 A. 884; *Talbot Packing Corporation v. Wheatley,* 172 Md. 365, 369, 190 A. 833; *Inasmuch Gospel Mission v. Mercantile Trust Co.,* 184 Md. 231, 234, 40 A. 2d 506. One of the sections of the Maryland Testamentary Act provides that in case any executor or administrator shall not have money sufficient to discharge the just debts of and claims against the decedent, the Orphans' Court shall, on his application made after the return of an inventory, direct a sale of the whole property therein contained, or of such part, or to such an amount as the court may think proper. Code 1939, art. 93, sec. 292. In the case at bar it was conceded that the sale of Mrs. Shaw's real estate was not made in pursuance of that section. The sale was concededly made in pursuance of Section 301 of Article 93, which provides as follows: "In all cases where an executor may be authorized and directed to sell the real estate of a testator, such executor may sell and convey the same, and shall account therefor to the orphans' court of the county where he obtained letters, in the same manner that an executor is bound to account for the sales of personal estate; * * * but such sale shall not be valid or effectual unless ratified and confirmed by the orphans' court, after notice by publication given in the same manner as practiced in cases of sales of lands under decrees in equity; * * *."

From an examination of Mrs. Shaw's will, we find that she clearly expressed her intention to confer upon her executors the power to sell her real estate. She explains in her will that inasmuch as her daughter, Anna F. Shaw, had advanced the sum of $1,000 to pay for the building of a garage on one of her properties, it is her desire that, when the said property is sold, she may be repaid that sum; and she therefore bequeaths the sum of $1,000 to this daughter with the express direction that

it shall be paid to her "when the Executors shall sell my Garrison Avenue Home." In addition, she directs that her executors shall pay all her debts, and divide the residue of her estate into six equal parts. It appeared from the account of the executors that there was no source other than the real estate from which the debts and bequests could be paid. Here, then, was an imperative necessity to make sale of the real estate in order to carry out the wishes of the testatrix. We hold that even when a testator directs that his real estate shall be sold, without expressly naming those who are to sell it, and also directs that the proceeds of sale shall be applied to the payment of debts or legacies, the executors have the power of sale by implication. *Peter v. Beverly,* 10 Pet. 532, 565, 9 L. Ed. 532, 535; *Ogle v. Reynolds,* 75 Md. 145, 151, 23 A. 137; *Talbott v. Compher,* 136 Md. 95, 100, 110 A. 100; *Tilghman v. Frazer,* 191 Md. 132, 59 A. 2d 781. Moreover, whenever it is necessary to sell real estate in order to effectuate the intention of the testator, there is an equitable conversion, although the testator gave the executor only a power of sale and did not expressly direct the sale to be made. The necessity to convert real estate into personalty to accomplish the purposes expressed by the testator is equivalent to an imperative direction to convey. *Stake v. Mobley,* 102 Md. 408, 415, 62 A. 963.

*Second.* Plaintiffs also questioned the validity of the deed from Isidor Zulver and wife to Zulver Realty Company, Inc., the last deed in the chain of title. The ground of attack was that when the grantors signed the deed on January 3, 1947, the grantee had not yet been incorporated. The certificate of incorporation was signed by Isidor Zulver and his wife and three other incorporators on January 4, and was received for record and approved by the State Tax Commission on January 6. It is elementary that it is essential for the validity of a deed that there shall be a grantee capable of taking the title at the time of the conveyance. *Duffield v. Duffield,* 268 Ill. 29, 108 N. E. 673, 675, Ann. Cas. 1916D, 859; *United States v. Southern Colorado Coal & Town Co.,* C. C., 18

F. 273, 276. So a deed to a supposed corporation which has not been duly incorporated and consequently has no legal existence does not pass any title. *Harwood v. Masquelette,* 95 Ind. App. 338, 181 N. E. 380; *Long v. St. Louis Union Trust Co.,* 332 Mo. 288, 57 S. W. 2d 1071, 1075; *Black v. Stephenson,* 166 Ark. 429, 267 S. W. 130, 132. But in this case the deed to Zulver Realty Company, Inc., was not recorded until October 27, 1947, nearly ten months after the company was incorporated. It is recognized that a deed takes effect only from the time of its delivery, and that time is the true date of the deed. *4 Kent's Commentaries,* 13th Ed., 454. As Judge Bryan said in *Gorsuch v. Rutledge,* 70 Md. 272, 277, 17 A. 76, 77: "A deed without delivery is in an imperfect state, and has no effect whatever." In the absence of evidence of the date of delivery, there is a *prima facie* presumption that the deed was delivered on the day of its date. But this presumption may be rebutted by evidence that the deed was delivered on a subsequent day. *Barry v. Hoffman,* 6 Md. 78, 87. As emphasized by the United States Supreme Court in *United States v. Le Baron,* 19 How. 73, 15 L. Ed. 525, 526, when it is shown by competent evidence that a deed was not delivered to the grantee until a subsequent day, the deed takes effect as of that subsequent day, and not as of the day of its date.

In *Rotch's Wharf Co. v. Judd,* 108 Mass. 224, 228, a trespass case, where the wharf company had offered a deed in evidence, to which defendant objected on the ground that Rotch's Wharf Company was not incorporated on the date of the deed, Chief Justice Chapman, speaking for the Supreme Judicial Court of Massachusetts, said: "The acceptance of the deed will be presumed as soon as the plaintiffs were competent to take it. * * * And these plaintiffs could accept a deed as soon as they became competent to make a contract under their charter." In other words, if there is no grantee in existence on the date of the deed, there can be no acceptance; if there is no acceptance, there is no delivery; and there can be no delivery as long as the deed is within the control

of the grantor and subject to his authority. *Hearn v. Purnell*, 110 Md. 458, 465, 72 A. 906. We hold that when the formalities required for incorporation are complied with prior to the delivery or recordation of a deed to the corporation, the deed passes title to the corporation. If the grantee named in a deed, even though nonexistent at the time the deed is signed and acknowledged, is in existence when the deed is delivered, and is competent to accept it, the deed takes effect upon delivery. *Spring Garden Bank v. Hulings Lumber Co.*, 32 W. Va. 357, 9 S. E. 243, 3 L. R. A. 583; 16 Am. Jur., Deeds sec. 88.

*Third.* Plaintiffs further assailed the title on the ground that the deed from Zulver and wife to Zulver Realty Company, Inc., was not recorded within six months from its date. The Maryland Conveyancing Act provides that every deed shall be recorded within six months from its date; but when the grantee in any deed shall take possession of the land purporting to be conveyed thereby, such deed, after being recorded (though not recorded within six months), shall have against all persons, from the time of taking possession, the same effect and validity, to all intents and purposes, as if the same had been recorded in proper time; but as against creditors who have become such before the recording of such deed, and without notice of the existence thereof, such deed shall have validity and effect only as a contract for the conveyance of the land. Code 1939, art. 21, secs. 14, 21, 22. In 1916 the Maryland Legislature amended the law by providing that whenever, by reason of the failure to record any deed within six months from its date, any creditors of the grantor become entitled under the Maryland statutes to assert their claims against the property conveyed by such deed, such creditors shall proceed in a court of equity to obtain a decree for the sale of such property within six months after the recording of such deed, or be thereafter absolutely barred from asserting their claims against such property. Laws of 1916, ch. 618, Code 1939, art. 21, sec. 23. Thus, under the present law, any creditors of the grantor in a deed are barred

from asserting their claims by reason of failure to record the deed within six months from its date, unless they proceed for the enforcement of their claims in the manner and within the period prescribed by the statute. *Kinsey v. Drury,* 146 Md. 227, 233, 126 A. 125. The record before us fails to disclose that there were any creditors who proceeded to assert their claims against the property in question.

Accordingly we have discovered nothing in the present record to show that the title was not marketable. A marketable title is a title free from encumbrances and any reasonable doubt as to its validity. No specific rule can be laid down as to what doubts will be sufficient to make a title unmarketable. The general rule is that the purchaser is entitled to a deed which will enable him to hold the land in peace and, if he wishes to sell it, to be reasonably certain that no flaw will appear to disturb its market value. However, a title, in order to be marketable, need not be free from every conceivable technical criticism. It is not every possibility of defect or even threat of suit that will be sufficient to make a title unmarketable. Objections based on frivolous and captious niceties are not sufficient. In other words, a marketable title is one which a reasonable purchaser, who is well informed as to the facts and their legal bearings, and ready and willing to perform his contract, would be willing to accept in the exercise of that prudence which business men ordinarily use in such transactions. *Gill v. Wells;* 59 Md. 492, 495; *Herzberg v. Warfield,* 76 Md. 446, 449, 25 A. 664; *Levy v. Iroquois Building Co.,* 80 Md. 300, 305, 30 A. 707, 708; *Cityco Realty Co. v. Friedenwald,* 130 Md. 329, 333, 100 A. 374; *Arnd v. Lerch,* 162 Md. 318, 322, 159 A. 587; *Garner v. Union Trust Co.,* 185 Md. 386, 390, 45 A. 2d 106, 163 A. L. R. 431; *Zepp v. Darnall,* 191 Md. 68, 59 A. 2d 774. It is, therefore, our opinion that plaintiffs should have paid the balance of $18,925 due on the purchase price, and accepted a deed for the property.

It is true that defendant undertook to obtain a confirmatory deed, even though such an instrument was not necessary for a marketable title, and as a result there was a delay in settlement beyond the period of 30 days. It is significant that it was not until after the expiration of that period that plaintiffs demanded a confirmatory deed for the consummation of the contract. Even assuming that time was of the essence of this contract, plaintiffs waived the provision requiring settlement within 30 days by demanding a confirmatory deed after the expiration of that period. *Evans v. Ozark Orchard Co.*, 103 Ark. 212, 146 S. W. 511, 513. Plaintiffs demanded a confirmatory deed within seven days. Defendant was entitled to be allowed a reasonable length of time in which to perform. *Larkin v. Koether*, 101 N. J. Eq. 176, 137 A. 849, 57 A. L. R. 1519. We are of the opinion that plaintiffs' demand was unreasonable, especially in view of the fact that three of the heirs were living in Canada. We find no disposition on defendant's part to evade the terms of the contract or to refuse to carry it out in good faith. Defendant apparently was willing to make an honest effort to comply with plaintiffs' demand. We find nothing to justify the Court in holding that defendant breached the contract or forfeited its rights thereunder.

As the evidence failed to show that plaintiffs were entitled to have their deposit of $2,000 returned, the judgment in favor of the plaintiffs must be reversed.

*Judgment reversed without a new trial, with costs.*